UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM W. LUMPKINS,

        Petitioner,

v.

JASON BENNETT,

        Respondent.

CASE NO. 3:22-CV-5852-JNW-DWC

REPORT AND RECOMMENDATION

Noting Date: June 2, 2023

    The District Court has referred this action to United States Magistrate Judge David W. Christel. Petitioner William W. Lumpkins, proceeding *pro se* and *in forma pauperis*, filed his federal habeas petition, pursuant to 28 U.S.C. § 2254, seeking relief from his state court conviction and sentence. *See* Dkts. 1, 7. The Court concludes the state court's adjudication of Grounds 1-3 was not contrary to, nor an unreasonable application of, clearly established federal law. The Court also concludes Ground 4 does not state a cognizable claim under § 2254. Therefore, the undersigned recommends the Petition be denied and a certificate of appealability not be issued.

## I. Background

### A. Factual Background

On October 16, 2015, in the Superior Court of Washington for Grays Harbor County ("trial court"), a jury found Petitioner guilty of rape in the first degree. *See* Dkt. 12-1 at 2 (Exhibit 1). The Court of Appeals of the State of Washington ("state court of appeals") summarized the facts of Petitioner's case as follows:

> I. Events of February 20, 2015
>
> In the early morning of February 20, 2015, S.S. [footnote omitted] was doing laundry away from her home. Around two or three in the morning, S.S. began walking home and ingested some heroin. As she was walking, a middle-aged black man approached her and invited her to smoke marijuana with him. She agreed and the two began to smoke together. The man told her he was from Illinois.
>
> The two walked around, smoked marijuana, and ended up outside of an apartment near a utility shed. The man invited her into the shed, but she refused and continued to smoke outside. The man repeatedly requested that S.S. perform sexual acts with him, but she refused. The man then grabbed S.S. and punched her in the face, causing her to lose consciousness.
>
> When S.S. regained consciousness, she realized that she was in the utility shed, and her pants and underwear were pulled down. She felt as though she just had sex with a man. As she walked out of the shed, police officers arrived. She had a bloody lip and soiled clothing. S.S. told the officer that an unknown black male had raped her. She also mentioned to the officers that her attacker had said he was from Illinois.
>
> She was taken to the hospital where health care workers took swab samples from her body. Also, S.S.'s injuries were documented to include marks on her neck, bleeding on the side of her eye, dried blood on her lips, a cut on her tongue, and lacerations in her genitalia.
>
> II. Investigation and Charge
>
> While at the hospital, Officer David Tarrence and Detective Jeff Weiss interviewed S.S. and showed her a photo montage. S.S. was immediately able to identify Lumpkins in the montage. She stated that she was "[o]ne-hundred and ten percent" confident that Lumpkins was the man who attacked her. Verbatim Report of Proceedings (VRP) (Oct. 15, 2015) at 131. The officers had his Illinois identification card from a prior investigation.

Lumpkins was arrested on February 20, 2015. A determination of probable cause was signed on February 21 and Lumpkins was booked into jail on February 23. On February, 24, the State filed a preliminary criminal complaint in district court alleging Lumpkins had committed first degree rape against S.S. and the district court conducted a preliminary hearing. The district court read Lumpkins the charge filed against him, appointed Lumpkins counsel, set bail at $100,000, and imposed conditions of release.

On March 24, the State dismissed the district court case and, on the same day, filed a felony information charging Lumpkins with the first degree rape and second degree assault with sexual motivation. On March 30, Lumpkins was arraigned in superior court. The superior court initially set the trial on May 27. The trial was continued several times.

While in jail, staff collected swab samples from Lumpkins including from the "inside surface of the fly area" of his underwear. VRP (Oct. 16, 2015) at 288. Lumpkins' clothing was placed into evidence. Lumpkins' clothing and swab samples, as well as swab samples taken from S.S., were tested for deoxyribonucleic acid (DNA). Samples taken from S.S. showed the presence of semen, but no specific male profile was identified. The sample taken from Lumpkins' underwear was consistent with the known profiles of S.S. and Lumpkins.

III. PreTrial Motions

Prior to trial, the prosecutor requested a continuance for additional testing, called Y-STR DNA testing, on the swab taken from S.S.'s genitalia. Y-STR DNA testing is more sensitive and would potentially have the ability to identify whose semen was in S.S's genitalia. Lumpkins agreed to the continuance. The Y-STR testing showed that the swab contained three different men's semen, but no match could be made to any specific individual. A week before trial, the State gave notice that it might call a lab analyst to testify from the Washington State Patrol (WSP) lab to explain the results of the Y-STR testing.

IV. Trial

At trial on October 17, S.S. made an in-court identification of Lumpkins and testified that she was confident Lumpkins was the man who attacked her, and that he told her that he was from Illinois. Further, the jury heard evidence that S.S. promptly identified Lumpkins in the photo montage. The officers had Lumpkins' Illinois identification card from a prior unrelated investigation. The State moved to admit Lumpkins' Illinois identification card and the trial court admitted it without objection by Lumpkins. Lumpkins testified that he had never met S.S.

After learning that the State would not be calling the Y-STR witness, defense counsel stated that he was debating whether to call the Y-STR witness. However, defense counsel later told the trial court that he had just been informed that the Y-

STR witness would not be available until the following week. The trial court stated that it would not delay the trial until the following week and told defense counsel to either call a witness or rest. Defense counsel then made a motion to continue the trial. Defense counsel explained that he had emailed a subpoena to the Y-STR witness the previous night. The trial court denied the motion to continue, ruling that emailing a subpoena is not a proper method of service. The defense then rested.

The jury found Lumpkins guilty of first degree rape and second degree assault with sexual motivation. At sentencing, defense counsel argued that the rape and assault convictions should merge. The trial court disagreed and imposed concurrent indeterminate sentences of 184 months to life on the rape conviction and 53 months to life on the assault conviction (including a 24-month statutory enhancement for sexual motivation).

Dkt. 12-1, at 22-25 (Exhibit 2); *State v. Lumpkins*, 5 Wash. App. 2d 1015 (2018).

B. Procedural Background

1. *Direct Appeal*

On December 4, 2015, the trial court originally sentenced Petitioner to concurrent indeterminate sentences of 184 months to life on the rape conviction and 53 months to life on the assault conviction. Dkt.12-1 at 40-56 (Exhibit 3). Petitioner challenged his conviction and sentence on direct appeal. *See id*. at 58-89 (Exhibit 4). Petitioner also filed a motion for a new trial and a personal restraint petition ("PRP"), that were transferred to the state court of appeals. *See id*. at 113-31 (Exhibit 6), 133 (Exhibit 7), 135-43 (Exhibit 8). The state court consolidated all three filings and affirmed Petitioner's first degree rape conviction, but found the second degree assault with sexual motivation conviction merged with the first degree rape conviction. *Id*. at 20-38 (Exhibit 2). The state court of appeals remanded the matter to the trial court to vacate the second degree assault with sexual motivation conviction and to resentence Petitioner. *Id*. Petitioner sought discretionary review by the Washington State Supreme Court ("state supreme court"). *See id*. at 279-341 (Exhibit 11). On February 6, 2019, the state supreme court denied

Petitioner's petition for review without comment. *Id*. at 343 (Exhibit 12). The state court of appeals issued its mandate on March 8, 2019. *Id*. at 345-46 (Exhibit 13).

On April 8, 2019, the trial court vacated the assault conviction and resentenced Petitioner to an indeterminate sentence of 147 months to life on the conviction for rape in the first degree. Dkt. 12-1 at 2-18 (Exhibit 1). Petitioner appealed the resentencing to the state court of appeals. *Id*. at 348-61 (Exhibit 14). Petitioner sought to voluntarily dismiss the appeal, which was granted by the state court of appeals. *Id*. at 380-89 (Exhibits 17, 18). The state court of appeals issued its mandate on May 18, 2021. *Id*. at 391 (Exhibit 19).

2. *Personal Restraint Petition*

After filing the PRP that was considered during Petitioner's direct appeal, Petitioner filed two additional PRPs. On May 3, 2021, Petitioner filed a post-conviction notice that was transferred to the state court of appeals for consideration as a PRP. Dkt. 12-1 at 394-99 (Exhibit 20). The state court of appeals dismissed the PRP on July 13, 2021. Dkt. 12-2 at 2-3 (Exhibit 21). Petitioner did not seek discretionary review from the state supreme court, and the certificate of finality was issued on August 25, 2021. *Id*. at 5 (Exhibit 22).

Petitioner filed another motion with the trial court seeking to vacate his conviction. Dkt. 12-2 at 7-34 (Exhibit 23). The trial court again transferred the motion to the state court of appeals to be considered as a PRP. *Id*. at 36-37 (Exhibit 24). The state court of appeals transferred the PRP to the state supreme court. *Id*. at 124-26 (Exhibit 27). The state supreme court dismissed the PRP on September 30, 2022, and issued the certificate of finality on December 7, 2022. *Id*. at 128-30 (Exhibit 28), 132 (Exhibit 29).

3. *Federal Petition*

On November 2, 2022, Petitioner initiated this case. Dkt. 1. In his Petition (Dkt. 7), Petitioner raised the following four grounds for relief:

1. The State failed to prove the essential element (sexual intercourse).
2. Ineffective assistance of counsel due process.
3. Prosecutorial misconduct – false or misleading argument due process.
4. Tainted photo montage (done by photo shopping) an unlawful seizure of Illinois identification card.

Dkt. 7. On January 19, 2023, Respondent filed, and served on Petitioner, an Answer to the Petition. Dkts. 11, 12. In the Answer, Respondent asserts the state court's adjudication of the grounds raised in the Petition was not contrary to, nor an unreasonable application of, clearly established federal law. *Id*. Petitioner did not file a traverse.

**II.  Discussion**

Respondent maintains the state courts' adjudication of the grounds raised in the Petition was not contrary to, nor an unreasonable application of, clearly established federal law. Dkt. 11.

A. <u>Standard of Review</u>

Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." In interpreting this portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts

1  "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite
2  result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

3        Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply
4  because that court concludes in its independent judgment that the relevant state-court decision
5  applied clearly established federal law erroneously or incorrectly. Rather, that application must
6  also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An
7  unreasonable application of Supreme Court precedent occurs "if the state court identifies the
8  correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts
9  of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court
10 decision involves an unreasonable application of Supreme Court precedent "'if the state court
11 either unreasonably extends a legal principle from [Supreme Court] precedent to a new context
12 where it should not apply or unreasonably refuses to extend that principle to a new context where
13 it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529
14 U.S. at 407).

15       The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas
16 courts to presume the correctness of state courts' factual findings unless applicants rebut this
17 presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of
18 state court decisions under §2254(d)(1) is "limited to the record that was before the state court
19 that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

20   B.  <u>Sufficiency of Evidence (Ground 1)</u>

21       In Ground 1, Petitioner contends the State failed to prove the essential element (sexual
22 intercourse). Dkt. 7 at 5. Petitioner states that S.S., the victim, felt like she had sex, which does
23 not constitute sexual intercourse. *Id*.

24

1   The Constitution forbids the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). When evaluating a claim of insufficiency of the evidence to support a conviction, the reviewing court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 419). The jury is entitled to believe the State's evidence and to disbelieve the defense's evidence. *Wright v. West*, 505 U.S. 277, 296 (1992).

Here, the state supreme court found there was sufficient evidence to convict Petitioner, stating:

> [Petitioner] also argues that the State failed to prove sexual intercourse. But the victim's testimony that she felt she had just had sex, lacerations on her genitalia, and evidence that [Petitioner] had used a condom raise a reasonable inference that there was penetration, however slight. *See* RCW 9A.44.010(14) (definition of "sexual intercourse").

Dkt. 12-2 at 129.

In Ground 1, Petitioner asserts there was insufficient evidence to convict him of rape in the first degree because the state failed to prove sexual intercourse. Dkt. 7. Petitioner was charged with rape in the first degree under Revised Code of Washington ("RCW") 9A.44.040(1)(c). *See* Dkt. 12-1 at 2 (Exhibit 1). Under this code provision, to convict Petitioner of first degree rape, the State had to prove Petitioner engaged in sexual intercourse with another person by forcible compulsion where the perpetrator or an accessory inflicts serious physical injury, including but not limited to physical injury which renders the victim unconscious. RCW 9A.44.040(1)(c). Petitioner

REPORT AND RECOMMENDATION - 8

contends only that the State failed to prove sexual intercourse occurred. Dkt. 7. Under Washington law, sexual intercourse occurs upon any penetration of the vagina or anus, however slight, and includes penetration by an object. RCW 9A.44.010(14)(a)-(b).

At trial, evidence presented to the jury showed S.S. told officers at the scene of the crime that she was raped. Dkt. 12-3 at 130 (Exhibit 35). She told the officers she was attacked from behind and became unconscious, when she awoke "she felt she just had sex." *Id*. S.S. testified that when she woke up her pants and underwear were pulled down to her ankles and she felt that she "had just gotten down having sex with him, within minutes, it seemed like." *Id*. at 91. She further testified that she "felt like the moisture of the sweat of being against somebody else for a moment, you know, of sexual[] intercourse, whatnot." *Id*. S.S. received a sexual assault examination at the hospital. *See* Dkt. 12-3. The examining nurse testified that S.S. had some very fine lacerations/abrasions in her genitalia at the entrance going into the vagina and pain when the nurse touched the area. *Id*. at 166-67. Moreover, evidence was presented to the jury showing both S.S.'s and Petitioner's DNA was present on the inside fly of Petitioner's underwear. *See* Dkt. 12-4 at 40. A condom wrapper was found at the scene of the crime, *id*. at 19, and the State's expert testified it was possible the cellular transfer to the underwear could have occurred if Petitioner wore a condom during sexual intercourse, left it on when pulling the underwear up, and disposed of the condom later. *Id*. at 46.

Based on the evidence presented at trial, viewed in the light most favorable to the State, a rational trier of fact could find Petitioner engaged in sexual intercourse with S.S., as defined under the RCW. S.S. testified that she felt like she had just had sex, a clinical exam showed lacerations and abrasions near the entrance of her vagina, and S.S.'s DNA was located on the inside fly of Petitioner's underwear. Petitioner has failed to show there was insufficient evidence

for the jury to conclude sexual intercourse occurred and to convict him of first degree rape. *See Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (internal citation omitted) ("Circumstantial evidence and reasonable inferences drawn from it may be sufficient to sustain a conviction."); *People of Territory of Guam v. Atoigue*, 36 F.3d 1103 (9th Cir. 1994) (finding rational inferences drawn from testimony was sufficient to prove sexual penetration); *State v. Snyder*, 199 Wash. 298, 301, 91 P.2d 570, 571–72 (1939) (for sexual intercourse "it is not necessary that the penetration should be perfect, the slightest penetration of the body of the female by the sexual organ of the male being sufficient; nor need there be an entering of the vagina or rupturing of the hymen; the entering of the vulva or labia is sufficient").

Petitioner has failed to demonstrate the state court's conclusion that there was sufficient evidence to find Petitioner guilty of rape in the first degree was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Ground 1 should be denied.

C. Ineffective Assistance of Counsel (Ground 2)

In Ground 2 of the Petition, Petitioner alleges he received ineffective assistance of counsel because his counsel failed to properly subpoena expert witness Laura Kelly. Dkt. 7 at 7.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court created a two-part test for determining whether a defendant received ineffective assistance of counsel. First, a defendant must demonstrate his attorney's performance was deficient, which requires showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, a defendant must demonstrate the deficient performance prejudiced the defense to such a degree the results of the trial cannot be trusted. *Id.*

Under the first prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances.

*Id.* at 690. The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation omitted).

Under the prejudice prong, a petitioner must establish there is a reasonable probability the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Strickland,* 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id*. at 697.

In determining Petitioner's counsel was not ineffective, the state court of appeals expressly applied the *Strickland* standard. Dkt. 12-1 at 27. The state court of appeals did not determine if counsel's performance was deficient and rejected Petitioner's claim because Petitioner did not show prejudice. *Id*. The state court of appeals found:

> [Petitioner] argues that his counsel's performance prejudiced him because "the defense's only hope was to cast doubt on the DNA link. A separate DNA test that did not conclusively link [Petitioner] and S.S. was the only way to do so." Br. of Appellant at 18-19. As discussed above, the potential evidence from the Y-STR witness would not have cast doubt on the DNA link between [Petitioner] and S.S. Based on the evidence presented at trial, there is no substantial likelihood that the absence of testimony from the Y-STR witness about the Y-STR results would have affected the verdict. Thus, [Petitioner] fails to make a sufficient showing on the prejudice prong. Therefore, we hold that his ineffective assistance of counsel claim fails.

Dkt. 12-1 at 28.

Petitioner appears to state that Laura Kelly's testimony regarding the Y-STR test would have disputed the State's claim that Petitioner used a condom. Dkt. 7 at 7. Petitioner does not provide any evidence regarding the content of Ms. Kelly's testimony. *See id*. Petitioner also does not provide, nor does the Court find, any citations to the record that show what evidence Ms. Kelly would have provided to the jury. Without this information, the Court finds Petitioner has failed to show he was prejudiced by his counsel's failure to subpoena Ms. Kelly. The Court notes that the state court of appeals found the Y-STR witness would have testified that there were three different men's semen found inside S.S.'s genitalia, but that there was no match that could be made to any specific individual. Dkt. 12-1 at 24, 26; *see also* Dkt. 12-1 at 395. This evidence does not rebut the DNA link between Petitioner and S.S. because the State presented uncontroverted evidence that S.S.'s DNA was present on the fly of Petitioner's underwear. *See* Dkt. 12-1 at 26; Dkt. 12-4 at 40. Moreover, there is no indication Ms. Kelly would have refuted the State's expert witness, who testified that S.S's DNA could have been found on Petitioner's underwear because he was wearing a condom during sexual intercourse. *See* Dkt. 12-4 at 46.

Based on the record before the Court, Petitioner has not established there is a reasonable probability the result of the trial would have been different but for counsel's failure to properly subpoena Laura Kelly. Petitioner has, therefore, failed to demonstrate the state court's conclusion that counsel was not ineffective for failing to properly subpoena Laura Kelly was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Ground 2 should be denied.

D. Prosecutorial Misconduct (Ground 3)

In Ground 3, Petitioner contends the State engaged in prosecutorial misconduct when the prosecutor presented false and misleading statements during closing arguments. Dkt. 7 at 8.

Specifically, Petitioner asserts the prosecutor argued that Petitioner used a condom, but there was no evidence to support that statement. *Id*.

In determining if a prosecutor's conduct rises to the level of prosecutorial misconduct, the relevant inquiry is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (per curiam) (*Darden* standard is "clearly established Federal law" for purposes of 28 U.S.C. § 2254(d)). A trial error is presumed to be harmless unless the error had "substantial or injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). It is the petitioner's burden to state facts that point to a real possibility of constitutional error in this regard. *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990). [1]

To determine if a due process violation occurred, the court "must consider the probable effect of the prosecutor's [comments] on the jury's ability to judge the evidence fairly." *United States v. Young*, 470 U.S. 1, 12 (1985). To do so, the prosecutor's remarks must be viewed in context. *See Boyde v. California,* 494 U.S. 370, 385 (1990); *United States v. Robinson,* 485 U.S. 25, 33–34 (1988); *Williams v. Borg,* 139 F.3d 737, 745 (9th Cir.1998). The Court may consider whether the prosecutor's comments manipulated or misstated the evidence, whether the trial court gave a curative instruction, and the weight of the evidence against the accused. *Darden*, 477 U.S. at 181–82.

---

[1] Although Supreme Court precedent provides the only relevant source of clearly established federal law for AEDPA purposes, circuit precedent can be "persuasive authority for purposes of determining whether particular state court decision is an 'unreasonable application' of Supreme court law," and in ascertaining "what law is 'clearly established.'" *Duhaime v. Ducharme,* 200 F.3d 597, 600–01 (9th Cir. 2000).

REPORT AND RECOMMENDATION - 13

In determining the prosecutor did not commit prosecutorial misconduct, the state supreme court stated:

> [Petitioner] argues that the prosecutor committed misconduct, misstated the record, and presented false testimony in arguing that the absence of a positive indication of [Petitioner]'s DNA on the victim coupled with the presence of both [Petitioner]'s DNA and the victim's DNA on [Petitioner]'s underwear could be explained by [Petitioner]'s use of a condom during the sexual assault and later disposal of the condom. [Footnote omitted] The prosecutor's argument on this point (to which [Petitioner] did not object at trial) was neither improper nor based on knowingly false testimony. The prosecutor may draw reasonable inferences from the evidence. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). An officer testified that an empty condom wrapper was found at the location of the assault matching the lot numbers of condoms found in the victim's purse. [Petitioner] could not be positively identified as one of the contributors of semen found on the victim, but his DNA and the victim's DNA were found on his underwear. The prosecutor could reasonably infer that these findings could be explained by [Petitioner]'s use of a condom that he later discarded, supported by the fact that an empty condom wrapper matching lot numbers of condoms in the victim's purse was located at the site of the incident. The absence of evidence that eliminated all other possibilities did not preclude the prosecutor from making an argument reasonably supported by the evidence presented. [Petitioner] demonstrates no prosecutorial misconduct.

Dkt. 12-2 at 128-29.

"Prosecutors have considerable leeway to strike 'hard blows' based on the evidence and all reasonable inferences from the evidence." *United States v. Henderson*, 241 F.3d 638, 652 (9th Cir. 2000); *see also United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993) ("prosecutors must have reasonable latitude to fashion closing arguments, and thus can argue reasonable inferences based on the evidence"), *as amended on denial of reh'g* (Apr. 15, 1993). "A prosecutor may not, however, base closing argument on evidence not in the record." *U.S. v. Sanchez-Soto*, 617 Fed. App'x. 695, 697 (9th Cir. 2015).

During closing arguments, the prosecutor stated that Petitioner "takes that opportunity [when S.S. was unconscious] to pull her pants and underwear down, and with the condom presumably from [S.S.'s] own bag, rapes her in the laundry room." Dkt. 12-4 at 107. The

REPORT AND RECOMMENDATION - 14

1  prosecutor also stated that there was an empty condom wrapper which indicated sex had
2  occurred. *Id*. at 112. The prosecutor argued that, in this case, the only way S.S.'s DNA was
3  mixed with Petitioner's DNA on the fly of his underwear -- but Petitioner's DNA was not found
4  on S.S. -- was because Petitioner used a condom. *Id*.

5      At the trial, evidence was presented to the jury showing both S.S.'s and Petitioner's DNA
6  were present on the inside fly of Petitioner's underwear. *See* Dkt. 12-4 at 40. A condom wrapper
7  was found at the scene of the incident, *id*. at 19, and that condom wrapper had the same lot
8  number as condom wrappers located in S.S.'s purse. *Id*. at 28-29. The State's expert testified it
9  was possible S.S.'s cellular transfer to Petitioner's underwear occurred because Petitioner wore a
10 condom during sexual intercourse, left it on when pulling his underwear up, and disposed of the
11 condom later. *Id*. at 46.

12     Based on the evidence presented at trial, it was reasonable for the prosecutor to argue
13 Petitioner used a condom during the commission of the crime. Thus, the prosecutor argued
14 reasonable inferences from the record and Petitioner has not shown the prosecutor misstated the
15 evidence regarding Petitioner's condom use. *United States v. Sayetsitty,* 107 F.3d 1405, 1409
16 (9th Cir.1997) (stating that prosecutors may make reasonable inferences from the evidence
17 presented at trial). Therefore, Petitioner has failed to demonstrate the state court's conclusion that
18 the State did not commit prosecutorial misconduct during closing arguments when the prosecutor
19 argued Petitioner used a condom during the commission of the crime was contrary to, or an
20 unreasonable application of, clearly established federal law. Accordingly, Ground 3 should be
21 denied.

22
23
24

E.  <u>Illegal Search and Seizure (Ground 4)</u>

In Ground 4, Petitioner asserts his rights were violated when the State relied on evidence obtained from his home unlawfully. Dkt. 7 at 10. Specifically, Petitioner alleges an Aberdeen Police detective took an Illinois state identification card from Petitioner's home in November of 2014 without a warrant or probable cause. *Id*. Petitioner states the police then used the unlawfully-obtained-evidence in a photo montage where S.S. identified Petitioner as her attacker. *Id*.

"The Fourth Amendment assures the 'right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.'" *Stone v. Powell*, 428 U.S. 465, 482 (1976). Courts will exclude evidence in order to effectuate these rights. *Id*. However, the exclusionary rule itself is not a personal constitutional right. *Id.* at 486. The rule is a judicially created remedial device designed to deter Fourth Amendment violations by law enforcement personnel rather than "to redress the injury to the privacy of the victim of the search or seizure, for any '[r]eparation comes too late.'" *Id.* at 486 (quoting *Linkletter v. Walker*, 381 U.S. 618, 637 (1965)). Because of this, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Powell*, 428 U.S. at 494; *see also Moormann v. Schriro*, 426 F.3d 1044, 1053 (9th Cir. 2005).

The federal court's inquiry is whether the petitioner had the opportunity to litigate his claim, not whether he did or even whether the claim was correctly decided. *Ortiz–Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (citing *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990)); *Locks v. Sumner*, 703 F.2d 403, 408 (9th Cir. 1983). To obtain relief, a petitioner must

demonstrate the state courts have not afforded him a full and fair opportunity to litigate his Fourth Amendment claims. *Woolery v. Arave*, 8 F.3d 1325, 1328 (9th Cir.1993). If a state provides the processes whereby a defendant can obtain full and fair litigation of a Fourth Amendment claim, then the petition will be denied whether or not the defendant employs those processes. *See Gordon*, 895 F.2d at 613–14 (holding that the determinative factor for the court was that California law allowed for motion to suppress evidence, not whether defendant litigated upon such grounds).

Here, Petitioner had an opportunity to litigate his unlawful search and seizure claim in the state courts. "The Washington Criminal Rules for Superior Court provide for a full and fair opportunity to litigate Fourth Amendment claims." *See Hunter v. Miller-Stout*, 2013 WL 1966168, at *14 (W.D. Wash. Apr. 23, 2013), *report and recommendation adopted*, 2013 WL 1964928 (W.D. Wash. May 10, 2013); *see also* Washington State Criminal Procedure Rule CrR 3.6. Furthermore, Petitioner had an opportunity to raise the Fourth Amendment claims on direct appeal or in a PRP. Indeed, in one of his PRPs, Petitioner raised a claim related to a detective unlawfully obtaining his identification card. *See* Dkt. 12-1 at 33.

As Petitioner had the opportunity to pursue and, in fact, pursued a claim challenging the lawfulness of the seizure of his identification card, Petitioner fails to show Ground 4 is cognizable under § 2254. *See Tisnado v. United States*, 547 F.2d 452, 456 (9th Cir. 1976) ("a federal court may not grant either § 2254 or § 2255 habeas corpus relief on the basis that evidence obtained in an unconstitutional search or seizure was introduced, respectively, at a state or federal trial where the defendant was provided an opportunity to litigate fully and fairly his fourth amendment claim before petitioning the federal court for collateral relief"). Accordingly, the Court finds Ground 4 should be denied.

### III. Evidentiary Hearing

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen*, 563 U.S. at 181-82. A hearing is not required if the allegations would not entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. The Court does not find it necessary to hold an evidentiary hearing because, as discussed in this Report and Recommendation, Petitioner's grounds for relief may be resolved on the existing state court record.

### IV. Certificate of Appealability

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or would conclude the issues presented in the Petition should proceed further. Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability with respect to the Petition.

## V.     Conclusion

For the above stated reasons, the Court concludes Petitioner has not shown the state courts' adjudication of Grounds 1- 3 was contrary to, or an unreasonable application of, clearly established federal law. The Court also concludes Ground 4 is not cognizable under § 2254. Additionally, an evidentiary hearing is not necessary. Therefore, the Court recommends the Petition be denied and a certificate of appealability not be issued. As the Court recommends denying the Petition and certificate of appealability, the Court also recommends Petitioner should not proceed *in forma pauperis* on appeal.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on June 2, 2023, as noted in the caption.

Dated this 18th day of May, 2023.

David W. Christel
Chief United States Magistrate Judge